[This opinion has been published in *Ohio Official Reports* at 71 Ohio St.3d 202.]

DAYTON BAR ASSOCIATION *v*. BENCH.

[Cite as *Dayton Bar Assn. v. Bench*, 1994-Ohio-84.]

*Attorneys at law—Misconduct—Permanent disbarment—Conviction of forgery.*

(No. 94-897—Submitted November 1, 1994—Decided December 20, 1994.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 93-13.

———————————

{¶ 1} By a complaint filed on April 19, 1993, relator, the Dayton Bar Association, charged that respondent, Douglas W. Bench of Orlando, Florida, Attorney Registration No. 0019916, had committed felony grand theft and, on a separate occasion, felony forgery (uttering), and that he had thereby violated DR 1-102(A)(1) (violation of a disciplinary rule), 1-102(A)(2) (circumventing a disciplinary rule through the actions of another), 1-102(A)(3) (engaging in illegal conduct involving moral turpitude), 1-102(A)(4) (engaging in conduct involving dishonesty, deceit, or misrepresentation), 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice), 1-102(A)(6) (engaging in conduct that adversely reflects on his fitness to practice law), 7-101(A)(1) (failing to seek the lawful objectives of a client through reasonably available means permitted by law and the Disciplinary Rules), 7-101(A)(3) (intentionally prejudicing or damaging a client during the course of the professional relationship), 7-102(A)(4)(knowingly using false evidence), 7-102(A)(5) (knowingly make a false statement of fact), 7-102(A)(6) (knowingly participate in the creation or preservation of evidence which he knew to be false), 7-102(A)(8) (knowingly engaging in illegal conduct or conduct contrary to a disciplinary rule), 9-102(A)(failing to preserve the separate identity of funds and property of a client), 9-102(B)(failing to account for and promptly deliver funds which a client is entitled to receive). Respondent was

served with the complaint, and filed an answer admitting most of the facts of the complaint, but denying the timing of his guilty pleas in the Montgomery County Common Pleas Court, Criminal Division.[1]

{¶ 2} The matter was submitted to a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") for a hearing on November 8, 1993. At the hearing, respondent and relator entered into verbal stipulations of fact as to many of the allegations contained in the complaint. Testimony was heard from two witnesses and respondent on the remaining issues.

*Mallory*

{¶ 3} In July 1985, respondent was retained by Lynda Mallory, the mother of Clinton Mallory, a minor, who was injured in a commercial hayride accident, to pursue and settle the personal injury claim. To further the action, Lynda Mallory was appointed guardian of the estate of Clinton Mallory. In April 1986, Lynda applied to the probate court for authority to settle the claim for her son's personal injuries in the amount of $11,200. On May 15, 1986, the probate court approved the settlement and authorized payment of $3,733.33 for respondent's legal services and ordering that $7,466.67 be deposited into a guardianship account for the benefit of the ward.

{¶ 4} Lynda relinquished the settlement funds to respondent, who deposited them into his trust account. In October 1986, respondent filed a guardian's inventory with the probate court showing that the settlement funds had been deposited into a certain account with Society Bank. In fact, the account was respondent's trust account. The guardian's signature on the inventory was a forgery.

{¶ 5} In August 1987, respondent filed the first partial account in the guardianship matter. Respondent included a Standard Bank Confirmation Inquiry

---

1. Respondent pled guilty to the conduct that forms the basis of the relator's complaint on January 19, 1990, in *State of Ohio v. Douglas W. Bench* (Jan. 19, 1990), Montgomery County C.P. No. 89-CR-3664, unreported. As a result of his guilty pleas, respondent was indefinitely suspended from the practice of law in Ohio on April 5, 1990, in case No. 90-512.

form as part of the filing. Lynda Mallory's signature was forged on both of the documents. The account indicates that $7,708.68 was held in the account name of "Guardianship of Clinton Mallory." The account number listed on the form is respondent's trust account. Respondent never created a guardianship account.

{¶ 6} The forgeries were discovered by Lynda in October 1989, when she contacted the probate court regarding a delinquent accounting from respondent. From these events respondent was charged with and subsequently pled guilty to felony grand theft, a violation of R.C. 2913.02(A)(2). Respondent was sentenced to one-year imprisonment, but was placed on probation.

{¶ 7} In April 1990, respondent paid Lynda Mallory, as guardian for her son, $9,000 to settle all claims against respondent. Respondent's trust account had insufficient funds to cover the amount owed during 1990. The funds used to pay Lynda came from respondent's personal account.

*Hale*

{¶ 8} On June 26, 1987, fourteen-year-old Christina Ritchie was killed along with three other teenagers and a truck driver in a car accident. Christina's mother, Tammy Ritchie Hale, contacted respondent for representation in an action for the death of her only child.

{¶ 9} In April 1988, Hale was appointed administratrix of Hale's daughter's estate. In March 1989, an application to approve a wrongful death settlement in the amount of $52,000 was filed with the Montgomery County Common Pleas Court, Probate Division. The application contains Hale's signature. Filed the same date was a Distribution of Wrongful Death Proceeds form also containing Hale's signature. Hale's signatures on both documents were forgeries. The distribution form indicates a settlement of $52,000, minus attorney fees of $17,333 and funeral expenses of $1,212.07, with net proceeds to Hale of $33,454.93. The document also contains the signature of R.B. Ritchie, Christina's father, which purports to approve of the distribution. That signature was also a forgery. Ritchie's signature

was also forged on an affidavit that purported to waive service of process and notice of any hearings. Respondent notarized the affidavit indicating that he had observed Ritchie sign the document. In fact, Ritchie was never contacted concerning the estate or the wrongful death matter.

{¶ 10} In April 1989 Hale had become aware of the settlement, agreed to it, and signed a document entitled "Statement in Lieu of 1st & Final Account," which was filed with the probate court. On April 19, 1989, respondent filed a Report of Distribution of Wrongful Death Proceeds with the probate court, indicating that Hale had received $33,455. The document bears two signatures by Hale, both forgeries. At that time, Hale had actually received $6,700 of the proceeds from respondent.

{¶ 11} Several weeks passed and Hale had not received any additional funds. Hale then went to respondent's office only to discover that the office was empty. A secretary in the office did not disclose respondent's whereabouts, but Hale received a call later that day from respondent. He indicated that he was in Florida and that she would receive her money soon. A few days later respondent called Hale again and requested that Hale falsely advise the probate court's chief legal deputy that Hale's mother had received full payment because respondent was concerned about Hale's mental condition. In May 1989, respondent paid Hale an additional $21,700 of the proceeds from the wrongful death suit. As a result of these events, respondent was charged with and pled guilty to a felony charge of forgery (uttering), in violation of R.C. 2913.31(A)(3). Respondent was sentenced to one year imprisonment, but was placed on probation.

{¶ 12} Upon review of the factual stipulations and the testimony at the hearing, the panel found a violation of DR 1-102(A)(1), 1-102(A)(2), 1-102(A)(3), 1-102(A)(4), 1-102(A)(5), 1-102(A)(6), 7-101(A)(1), 7-101(A)(3), 7-102(A)(4), 7-102(A)(5), 7-102(A)(6), 7-102(A)(8), 9-102(A), and 9-102(B).

4

**{¶ 13}** The panel also found that at the time of the events discussed herein, respondent was having significant marital problems, which had a profound impact on him. Eventually respondent decided to leave the practice of law. Respondent had moved to Florida, reconciled with his wife and was involved in a number of nonlaw-related business activities.

**{¶ 14}** The panel then recommended that respondent be indefinitely suspended from the practice of law in Ohio with no credit for his suspension from April 1990. The board adopted the panel's findings and its recommendation, and also recommended that costs be taxed to respondent.

————————————

*David F. Rudwall*, for relator.
*Douglas W. Bench*, *pro se*.

————————————

***Per Curiam.***

**{¶ 15}** Having thoroughly reviewed the record, we agree with the board's findings of misconduct, but disagree with its recommendation. Given the gravity of respondent's actions, Douglas W. Bench is hereby permanently disbarred from the practice of law in Ohio. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

————————————